## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GEORGE A. ARASIMOWICZ, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:11-cv-1894 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ALL PANEL SYSTEMS, LLC AND | : | JUNE 5, 2013 |
| MASSEY'S PLATE GLASS & | : | |
| ALUMINUM, INC., | : | |
| Defendants. | : | |

## RULING RE:  CROSS MOTIONS FOR PARTIAL
## SUMMARY JUDGMENT (Doc. Nos. 58, 59)

## I.    INTRODUCTION

Plaintiff George A. Arasimowicz ("Arasimowicz") commenced this action against

defendants All Panel Systems, LLC ("All Panel") and Massey's Plate Glass & Aluminum,

Inc. ("Massey's," and with All Panel, "defendants"), his former employers.  The

Amended Complaint alleges five counts.[1]  Counts 1 and 2 allege that the defendants

failed to pay Arasimowicz overtime pay in violation of the Fair Labor Standards Act (the

"FLSA"), 29 U.S.C. § 207.  Count 3 alleges that All Panel retaliated against Arasimowicz

in violation of the FLSA.  Counts 4 and 5 allege that the defendants failed to pay

Arasimowicz overtime pay in violation of the Connecticut Minimum Wage Act (the

"CMWA").

The defendants filed a Motion for Partial Summary Judgment (Doc. No. 58) with

respect to Counts 1, 2, 4, and 5.  Arasimowicz filed a Cross-Motion for Partial Summary

Judgment (Doc. No. 59) as to the same Counts.

---

[1] The Amended Complaint (Doc. No. 46) appears to erroneously title two counts as "Count 4."
This court will consider the first-named "Count 4" to be correct and will refer to the latter-named "Count 4"
as "Count 5."

## II.    STATEMENT OF FACTS

All Panel is a Connecticut Limited Liability Company consisting of four members, including Venance LaFrancois ("LaFrancois").  Defs.' Local Rule ("L.R.") 56(a)1 Stmt. (Doc. No. 58-8) ¶1.  LaFrancois was Arasimowicz's supervisor at another firm before leaving to start All Panel.  Id. ¶ 2.  Sometime after All Panel was formed, Arasimowicz informed LaFrancois that he was seeking employment.  Id.  On April 19, 2010, Arasimowicz was hired by Massey's at a starting salary of $65,000 a year, equivalent to a base salary of $1,250 a week.  Id. ¶¶ 3–4; Pl.'s L.R. 56(a)1 Stmt. (Doc. No. 61) ¶ 3.  From that date until December 31, 2010, Arasimowicz was employed on paper by Massey's, although he effectively worked for All Panel.  Defs.' L.R. 56(a)1 Stmt. ¶ 3; Pl.'s L.R. 56(a)1 Stmt. ¶ 4.  Starting January 1, 2011,  Arasimowicz was officially transferred to All Panel's payroll.  Defs.' L.R. 56(a)1 Stmt. ¶ 3.

LaFrancois and another individual at All Panel, Phil Delise ("Delise"), were the two persons responsible for the decision to exempt Arasimowicz from the FLSA and CMWA overtime provisions.  Pl.'s L.R. 56(a)1 Stmt. ¶¶ 15, 17.  When LaFrancois offered Arasimowicz a job in 2010, LaFrancois and Delise had not discussed whether it would be legal to classify Arasimowicz as an exempt employee.  Id. ¶ 16.

During the time that Arasimowicz was employed by Massey's and by All Panel, he had the job title of "Project Detailer/Fabrication Shop Coordinator," and he worked under the direct supervision of LaFrancois.  Pl.'s L.R. 56(a)1 Stmt. ¶¶ 6–7.  Although the parties disagree as to what Arasimowicz's "primary" duties were, they agree that his duties included such tasks as drafting plans for building panels and drawing elevation layouts for panels.  Pl.'s L.R. 56(a)1 Stmt. ¶¶ 8–9; Defs.' L.R. 56(a)2 Stmt (Doc. No. 66)

at 2.  The parties also agree that Arasimowicz never took on any duties related to either

company's taxes, insurance, or payroll.  Pl.'s L.R. 56(a)1 Stmt. ¶ 10; Defs.' L.R. 56(a)2

Stmt. at 2.

On November 17, 2010, Arasimowicz sent LaFrancois an email containing a link

to a section of the website of the Connecticut Department of Labor (the "CDOL") that

had information regarding whether employees may be exempted from overtime

payment.[2]  Pl.'s L.R. 56(a)1 Stmt. ¶¶ 19–20; Letter from Arasimowicz to LaFrancois,

dated Nov. 17, 2010 (Doc. No. 60-8) ("Arasimowicz Letter"), Ex. H to Pl.'s Mem. Mot.

Summ. J., at 1.  Arasimowicz Letter at 1.  LaFrancois did not call or write a letter to the

CDOL after receiving this email from Arasimowicz.  Pl.'s L.R. 56(a)(1) Stmt. ¶ 24.

On September 9, 2011, Arasimowicz's employment with All Panel ended.  Pl.'s

Mem. Mot. Summ. J. (Doc. No. 60) at 5.[3]

## III.   STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is

no genuine issue of material fact to be tried, and the facts as to which there is no such

issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574

---

[2] In the letter, Arasimowicz also states, "I feel that I should be Salary Exempt as I have mentioned
to Phil and yourself before."  It appears from his statement and from the rest of the email that
Arasimowicz inadvertently omitted a word and intended to write that he felt he should not be salary
exempt.  Prior to making that statement, Arasimowicz writes LaFrancois to "please read the CT Dept of
Labor page on Salary Exempt . . . and Non-Exempt laws," includes a link to a section of the CDOL
website with information regarding whether employees may be exempted from overtime payment, and
tells LaFrancois about a previous job where the State of Connecticut audited the company and re-
classified "detailers/designers in Engineering that were being paid as 'Salary Exempt' . . . as 'Salary Non-
Exempt."  Arasimowicz Letter at 1.  However, the defendants have denied Arasimowicz's claim that he
stated in that email that "he believed he had been misclassified as exempt from overtime pay."  See Pl.'s
L.R. 56(a)1 Stmt. ¶ 19; see also Defs.' L.R. 56(a)2 Stmt. at 4.  Accordingly, this court cannot find, as an
undisputed fact, that Arasimowicz claimed in that particular portion of the email that he should not be
salary exempt.

[3] Count 3 of the Amended Complaint, which alleges that All Panel terminated Arasimowicz in
retaliation for complaining that he was improperly classified as exempt under the FLSA, is not at issue in
either motion for summary judgment.

F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment."  United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

**IV.    DISCUSSION**

A. <u>Statutes</u>

1.  The FLSA

Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours." <u>Barrentine v. Arkansas–Best Freight Sys., Inc.</u>, 450 U.S. 728, 739 (1981), <u>overruled on other grounds</u>, <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20 (1991); <u>see also</u> <u>Hintergerger v. Catholic Health Sys.</u>, No. 8-cv-948S, 2012 WL 125152, at *5 (W.D.N.Y. Jan, 17, 2012).  Under section 207 of the FLSA, employers may not employ covered workers "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  The FLSA also provides a remedy for violations of its overtime provisions:  employers who violate section 207 "shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation," as well as for liquidated damages.  29 U.S.C. § 216(b).

The FLSA exempts certain categories of employees from its overtime requirements, including "any employee employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).  Such exemptions "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakeably within their terms and spirit."  <u>Arnold v. Ben Kanowsky, Inc.</u>, 361 U.S. 388, 392 (1960).  Moreover, the employer typically bears the burden of proving that an employee falls within an exemption.  <u>Corning Glass Works v. Brennan</u>, 417 U.S. 188, 196–97 (1974) ("[T]he

application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof."); Donovan v. Carl's Drug Co., Inc., 703 F.2d 650, 652 (2d Cir. 1983) (placing burden of proof on employer to show that employees were exempt "professional employees" under the FLSA), rejected on other grounds by McLaughlin v. Richland Shoe Co., 486 U.S. 128, 134 (1988).

    2.  The CMWA

    Like the FLSA, the CMWA requires employers to compensate non-exempt employees for any work over 40 hours a week.  Conn. Gen. Stat. § 31-76c.  Also, like the FLSA, the CMWA places the burden on the employer to prove that an employee fits within an exemption.  Butler v. Hartford Tech. Institute, 243 Conn. 454, 466 (1997).

B.  Exemptions

    The defendants argue that Arasimowicz qualified as an exempt employee under two of the FLSA's categories:  administrative employees and professional employees. Defs.' Mem. Mot. Summ. J. (Doc. No. 58-9) at 6–9 (administrative employee), 10–18 (professional employee).  The defendants also argue that Arasimowicz qualified as an exempt employee under the CMWA's administrative and professional exemptions. Those exemptions mirror the FLSA's administrative and professional exemptions and are applied in the same manner.  See Hendricks v. J.P. Morgan Chase Bank, N.A., 677 F. Supp. 2d 544, 560 (D. Conn. 2009) (noting that the administrative and professional exemptions in the CMWA and the FLSA "parallel" each other, and further noting that "the Connecticut Supreme Court has indicated that federal precedent can be used to interpret Connecticut laws that are analogous to provisions contained in the FLSA").

Arasimowicz disputes both classifications and also argues that he was not an exempt executive employee or computer professional employee.  Pl.'s Mem. Mot. Summ. J. at 11, 16–17.

1.  Executive Exemption

An exempt "bona fide executive" under the FLSA is one:  (1) who is paid a salary of at least $455 per week; (2) whose "primary duty is management" of the employee's company or department or subdivision thereof; (3) who "customarily and regularly directs the work" of at least two other employees; and (4) who "has the authority to hire or fire other employees or whose suggestions and recommendations" regarding such decisions are accorded "particular weight."  29 C.F.R. § 541.100.

Arasimowicz argues that he is not a "bona fide executive" under the FLSA because, according to his supervisor LaFrancois's testimony, Arasimowicz "only ever directed the work of one other employee," and even with respect to that employee, "did not have the power to fire him or have any input into his status as an employee."  Pl.'s Mem. Mot. Summ. J. at 11; Deposition Transcript of J.R. LaFrancois, dated Dec. 13, 2012 (Doc. No. 60-1) ("LaFrancois Tr."), Ex. A to Pl.'s Mem. Mot. Summ. J., at 47:22– 48:13.[4]  Moreover, the defendants do not appear to contest this argument in their opposition.  See generally Defs.' Mem. in Opp. to Pl.'s Mot. Summ. J. (Doc. No. 64). Accordingly, the court concludes that there is no genuine material issue of fact that Arasimowicz was not an exempt "bona fide executive" under the FLSA and grants summary judgment for Arasimowicz on that issue.

_____

[4] Exhibit A contains excerpts of LaFrancois's deposition transcript.  Portions of the same transcript are excerpted elsewhere.  See, e.g., Doc. No. 67-2, Ex. B to Pl.'s Opp. to Defs.' Mot. Summ. J. This court will not differentiate between the two excerpts, but will cite to "LaFrancois Tr." whenever it cites to either exhibit.

2.  Administrative Employee Exemption

An exempt administrative employee under the FLSA is one:  (1) who is paid a salary of at least $455 per week; (2) whose "primary duty is the performance of office or non-manual work directly related to the management or general business operations" of the employer or its customers; and (3) whose primary duty also "includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200.  With respect to (2), "work directly related to the management or general business operations" must be "work directly related to assisting with the running or servicing of the business."  Id. § 541.201(a).  With respect to (3), whether an employee exercises "discretion and independent judgment" requires a holistic assessment of the employee's situation, including the consideration of such factors as:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree . . . ; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

Id. § 541.202(b).  There is no dispute that Arasimowicz meets the first requirement, so this court turns to the second requirement—whether Arasimowicz performed work "directly related to the management or general business operations" of All Panel.

The defendants argue that Arasimowicz assisted in "running or servicing" All Panel by "obtaining bid quotations, buying parts[,] . . . and establishing drafting protocols for outside personnel that were being utilized by All Panel."  Defs.' Mem. Mot. Summ. J. at 8 (citing Resume of George R. Arasimowicz (Doc. No. 58-2) ("Arasimowicz Resume"), Ex. A to Affidavit of LaFrancois, dated Jan. 24, 2013 ("Jan. 24, 2013 LaFrancois Aff.") (Doc. No. 58-1), and Deposition Transcript of George Arasimowicz, Jr. ("Arasimowicz Tr.") (Doc. No. 58-4), Ex. C. to Jan. 24, 2013 LaFrancois Aff.).[5]  The defendants also allege that Arasimowicz did other work "essential to the general business operations of All Panel," including creating Computer Assisted Design ("CAD") drawings; attending pre- and post-bid meetings; drawing fabrication tickets for the panel assembly machine; coordinating details for and completing bills of materials for drawings; preparing packing lists; and coordinating drawings, submissions, revisions, and project scheduling.  Defs.' Mem. Mot. Summ. J. at 8–9 (citing Jan. 24, 2013 LaFrancois Aff. ¶ 12).

Arasimowicz argues that his primary duties at work consisted of "produc[ing] panels and architectural drawings for [All Panel]" through the use of Computer Assisted Design ("CAD") software, and that such work is properly characterized as "production" that falls outside the administrative work contemplated by section 541.202(a).  The Second Circuit has recognized the distinction between employment "belonging in the administrative category, which falls squarely within the administrative exception, [and] production/sales work, which does not."  Davis v. J.P. Morgan Chase & Co., 587 F.3d

---

[5] Exhibit C contains excerpts of Arasimowicz's deposition transcript.  Portions of the same transcript are excerpted elsewhere.  See, e.g., Doc. No. 67-1, Ex. A to Pl.'s Opp. to Defs.' Mot. Summ. J. This court will not differentiate between the two excerpts, but will cite to "Arasimowicz Tr." whenever it cites to either exhibit.

529, 531–32 (2d Cir. 2009); but see Neary v. Metro. Prop. & Cas. Ins. Co., 517 F. Supp. 2d 606, 614 (D. Conn. 2007) (stating that the distinction is relevant but not dispositive). The distinction is based on "the nature of [an employee's] duties, not the physical conditions of [his] employment." Davis, 587 F.3d at 533.

In Davis, the Second Circuit held that an underwriter tasked with approving loans performed production work and did not qualify for the administrative exemption. The court noted that the employee's primary duty was to sell products rather than to advise customers about what products were appropriate for them. Id. at 534. Accordingly, the employee's work related to "the 'production' of loans—the fundamental service provided by the bank," not "to setting 'management policies' [ ]or to 'general business operations' such as human relations or advertising." Id. The court also distinguished the employee's work, which was "functional," from "conceptual" work related to the bank's strategy, overall efficiency, or mode of operation. Id. at 535. Drawing from case law in this and other Circuits, the Davis court noted "an important distinction between employees directly producing the good or service that is the primary output of a business and employees performing general administrative work applicable to the running of any business." Id. (emphasis added) (citing, among other cases, Reich v. State of New York, 3 F.3d 581 (2d Cir. 1993), overruled by implication on other grounds by Seminole Tribe v. Florida, 517 U.S. 44 (1996)).

Applying Davis's framework to this case, this court finds no evidence to create a genuine issue of material fact as to whether Arasimowicz's primary duties involved administrative, not production work. The evidence in the record shows that Arasimowicz's primary duty was the production of drawings for panels that would be

10

manufactured by All Panel.  Arasimowicz testified that his primary duty was using CAD to draft plans for panels that were manufactured by All Panel.  Aff. of George Arasimowicz, Ex. B to Pl.'s Mem. Mot. Summ. J. (Doc. No. 60-2) ("Arasimowicz Aff.") ¶¶ 3–4.  Although the defendants allege that Arasimowicz also performed other tasks "essential to the general business operations of All Panel," they provide no evidence showing that those other tasks comprised Arasimowicz's <u>primary</u> duties.  <u>See</u> Defs.' Mem. Mot. Summ. J. at 8; <u>see</u> <u>also</u> 29 C.F.R. § 541.700 (defining "primary duty" as the "principal, main, major or most important duty that the employee performs," and noting that "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement").  Moreover, LaFrancois, Arasimowicz's supervisor, testified that, although Arasimowicz was not "merely" a CAD designer, his primary duty was "CAD detailing."  LaFrancois Tr. at 147:15–148:4 ("Q: [W]hat was [Arasimowicz's] primary duty?  A:  He did CAD detailing as a primary.").

Arasimowicz's primary duty, <u>i.e.</u>, his CAD detailing, constituted production, not administrative, work.  According to Arasimowicz, his work involved drawing lines, or "geometry," on a computer using a program called AutoCAD; sending the geometry to a machine, which created a product of those cut-out lines; and using that product to create dimensions on a blueprint for a panel.  <u>See</u> Arasimowicz Tr. at 93:12–19.  The defendants argue that Arasimowicz's work required "great skill, technique and judgment" in "making certain that his plans conformed with architectural designs," and that his job as a draftsman was "at the core or heart of [All Panel] and critical to its operation."  Defs.' Mem. Mot. Summ. J. at 9.  However, these arguments do not explain why Arasimowicz's duties should be classified as "administrative" rather than

"production."  In fact, the defendants' descriptions of Arasimowicz's work—as a "draftsman" and ensuring conformity with architectural designs, see, e.g., Jan. 24, 2013 LaFrancois Aff. ¶ 13—is the type of work "directly producing the good or service that is the primary output of [All Panel]," and is not "general administrative work applicable to the running of any business."  Davis, 587 F.3d at 535.

Moreover, much of the email correspondence presented by the defendants in support of their argument illustrates that Arasimowicz's role involved the production of the drawings rather than a more general "running or servicing" of All Panel.  See emails attached as Ex. D to Jan. 24, 2013 LaFrancois Aff. (Doc. No. 58-5) ("Arasimowicz Emails") at 1 (describing work on drawings); id. at 4 (describing preparation of drawings for production of panels); id. at 12 (discussing possible errors in dimensions in drawings, and suggesting corrections).  Even much of the "other" work that the defendants allege Arasimowicz performed appears to relate to production of the panels rather than to the administration of general business for All Panel.  See Defs.' Mem. Mot. Summ. J. at 8 (listing, among other tasks, buying parts, soliciting pricing from suppliers and manufacturers, drawing fabrication tickets, creating and coordinating details for bills of materials, preparing packing lists, coordinating issues related to shop drawings, and working with outside personnel involved in the production process).  The defendants' contention that these tasks required Arasimowicz to exercise "discretion and independent judgment," id. at 9, does not show that those tasks involved the type of administrative work contemplated by the FLSA.  See Neary, 517 F. Supp. 2d at 615 (finding that writing estimates and negotiating repair costs with outside personnel did

not constitute work "directly related to the management or general business operation" of insurance company).

Because Arasimowicz did not perform work directly related to management policies or general business operations, no reasonable factfinder could find under the FLSA that Arasimowicz's primary tasks constituted administrative, rather than production, work.  "Because an administrative employee must *both* perform work directly related to management policies or general business operations *and* customarily and regularly exercise discretion and independent judgment, . . . [Arasimowicz] was not employed in a bona fide administrative capacity."  Davis, 587 F.3d at 537 (emphasis in original).  Accordingly, the court concludes that there is no genuine issue of material fact that Arasimowicz was an exempt administrative employee under the FLSA and grants summary judgment to Arasimowicz on that issue.

The administrative exemption under the CMWA applies similar standards.[6] Therefore, the court concludes that there is no genuine issue of material fact as to whether Arasimowiz is an exempt administrative employee under the CMWA, see Hendricks, 677 F. Supp. 2d at 560, and grants summary judgment to Arasimowicz on that issue.

 3.  Learned Professional Exemption

An exempt learned professional employee under the FLSA is one:  (1) who is paid a salary of at least $455 per week; and (2)(i) whose "primary duty" is the performance of work that requires "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual

---

[6] The defendants concede that the language of the state regulations regarding the administrative exemption "is very similar to the federal regulations," and in fact has an additional requirement that must be met.  See Defs.' Mem. Mot. Summ. J. at 20.

instruction."[7]  29 C.F.R. § 541.300–01.  Requirement (2)(i)—also known as the "primary duty test" for exempt learned professionals—includes three elements:  (1) the employee's work requires "advanced knowledge"; (2) the advanced knowledge is in a "field of science or learning"; and (3) the advanced knowledge is the type of knowledge "customarily acquired by a prolonged course of specialized intellectual instruction."  Id. § 541.301(a).

The defendants argue that Arasimowicz has "acquired advanced knowledge and a high level of skill as an 'architectural draftsman,' mechanical draftsman and designer[,] and fabricator/detailer."  Defs.' Mem. Mot. Summ. J. at 10–11.  The defendants note that Arasimowicz received a two-year diploma in "Mechanical and Electronic Design Drafting, CAD/CAM" in 1992, during which he learned "basic drafting skills" and how to read bluprints; and that he subsequently worked at several jobs with varying responsibilities and requirements related to drafting and design.  See id. at 11–13 (describing Arasimowicz's professional career).

Arasimowicz argues that he is not an exempt learned professional because he does not meet the three elements of the primary duty test.  See Pl.'s Opp. to Defs.' Mot. Summ. J. at 13–15.  Specifically, Arasimowicz argues that his work does not require a college degree, and the fact that he took a "short, technical course" in AutoCAD drafting does not show that his work requires advanced knowledge in a field of learning "customarily acquired by a prolonged course of specialized intellectual instruction."  Pl.'s Mem. Mot. Summ. J. at 14–15 (quoting 29 C.F.R. § 541.300).  Second, Arasimowicz argues that the federal regulations "specifically distinguish an exempt engineer from a

---

[7] Section 541.300 also provides that an employee may be an exempt professional if his job requires "invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." 29 C.F.R. § 541.300(a)(2)(ii).  Neither party argues that this exemption is at issue.

non-exempt draftsman" such as Arasimowicz.  See id. at 15–16 (citing 29 C.F.R. § 541.308(b) ("The field of 'engineering' has many persons with 'engineer' titles, who are not professional engineers, as well as many who are trained in the engineering profession, but are actually working as . . . draftsmen.").

This court finds that there is no evidence before it upon which a reasonable jury could find that Arasimowicz is an exempt learned professional.  The Second Circuit's decision in Young v. Cooper Cameron Corp., 586 F.3d 201 (2d Cir. 2009), is instructive.  There, the plaintiff, a product design specialist, had over twenty years of experience "in the engineering field as a draftsman, detailer, and designer."  Id. at 203.  His work, drafting plans for hydraulic power units ("HPUs"), "required depth of knowledge and experience, and entailed considerable responsibility and discretion," and the plaintiff "operated at the center of both the conceptual and physical processes" of the creation and development of the HPUs.  Id. at 203–04.  Despite all of this, the Second Circuit determined that the plaintiff was not an exempt learned professional because, among other reasons, his position did not require advanced education training or instruction.  See id. at 205–06.  The court noted that the phrase "customarily acquired by a prolonged course of specialized intellectual instruction . . . makes the exemption applicable to the rare individual who, unlike the vast majority of others in the profession, lacks the formal educational training and degree."  Id. at 206.  Accordingly, because the plaintiff's position required no such prolonged advanced educational training or instruction, the plaintiff was not exempt.  Id.

Here, the defendants have offered no evidence suggesting that Arasimowicz's position required prolonged advanced educational training or instruction.  See Defs.'

Mem. Mot. Summ. J. at 10–18.  As noted earlier, Arasimowicz does not have a college

degree.  See id. at 11 (noting that Arasimowicz received a diploma in CAD drafting,

where he learned "basic drafting skills"); Ex. F to Pl.'s Opp. to Defs.' Mot. Summ. J.

(describing school where Arasimowicz received his diploma as a "technical school" that

provides "career training"); see also Zubair v. Entech Engineering, Inc., 808 F. Supp. 2d

592, 595, 598 (S.D.N.Y. 2011) (holding that plaintiff was not an exempt learned

professional despite his bachelor's degree in engineering, because the position "does

not require a college or an advanced degree").  Even if Arasimowicz's work required

advanced skill and discretion, as the defendants claim, that would not show why such

work would qualify Arasimowicz for the learned professional exemption, rather than

being the work of a non-exempt skilled tradesman.  See 29 C.F.R. § 541.301(c); see

also Young, 586 F.3d at 205–06.  Neither does the defendants' recitation of

Arasimowicz's twenty years of experience evidence that he should be exempt.  See 29

C.F.R. § 541.301(d) ("[T]he learned professional exemption . . . does not apply to

occupations in which most employees have acquired their skill by experience rather

than by advanced specialized intellectual instruction."); Young, 586 F.3d at 203 (noting

non-exempt plaintiff's twenty years of experience as "draftsman, detailer, and

designer").

       Two cases that the defendants cite in support of their position are also unhelpful.

The Second Circuit and other courts in this district have criticized Dingwall v. Friedman

Fisher Assocs., P.C., 3 F. Supp. 2d 215 (N.D.N.Y. 1998), where the court held that an

employee who designed electrical systems qualified for the learned professional

exemption.  See, e.g., Young, 586 F.3d at 206–07 (criticizing Dingwall as an example of

a court "either misapply[ing] (or ignor[ing] altogether) the requirement that the plaintiff's knowledge be of the type customarily required by a prolonged course of advanced intellectual study"); Zubair, 808 F. Supp. 2d at 599 (criticizing Dingwall for holding, "in a single sentence and without further elaboration," that the plaintiff's job met the requirements for the learned professional exemption).

The second case relied on by the defendants, Aulen v. Triumph Explosive, Inc., 58 F. Supp. 4 (D. Md. 1944), is a non-binding case from seventy years ago and is equally unhelpful. There, an employee of a munitions plant in Maryland was tasked with designing "a new type of machinery not theretofore available in this country." Id. at 6. The court determined that development of this new machinery required the plaintiff to engaged in "predominantly intellectual and creative" work to build the machine. Id. Here, the record does not suggest that Arasimowicz's work deals with similarly novel inventions that would require specific "intellectual and creative" capabilities. Additionally, the Aulen court does not follow the framework that the Second Circuit provided, in Young, to determine whether work qualifies under the learned professional exemption. See Young, 586 F.3d at 201–05.

Because Arasimowicz's primary work—CAD detailing and drawing—does not require "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction," 29 C.F.R. § 541.301, no reasonable jury could find that Arasimowicz is an exempt learned professional under the FLSA. Accordingly, this court grants summary judgment for Arasimowicz as to that issue. Additionally, because similar standards apply to the

professional exemption under the CMWA,[8] this court also grants summary judgment for

Arasimowicz as to that exemption unde the CMWA.  See Hendricks, 677 F. Supp. 2d at

560.

4.  Computer Professional Exemption

An exempt computer professional is one who is paid a salary of at least $455 per

week and whose "primary duty" consists of:

> (1) The application of systems analysis techniques and procedures . . . to
> determine hardware, sofrtware or system functional specifications; (2) The
> design, development, documentation, analysis, creation, testing or
> modification of computer systems or programs . . . ; (3) The design,
> documentation, testing, creation or modification of computer programs
> related to machine operation systems; or (4) A combination of the
> aforementioned duties, the performance of which requires the same level
> of skills.

29 C.F.R. § 541.400(b).  Arasimowicz argues that he was not an exempt computer

professional, because the exemption is "aimed at IT professionals whose work related

to computers per se, not at employees whose work happens to be performed using a

computer."  Pl.'s Mem. Mot. Summ. J. at 9–10 (citing Pellerin v. Xspedius Mgmt. Co. of

Shreveport, LLC, 432 F. Supp. 2d 657, 660, 665 (W.D. La. 2006)).  The defendants do

not contest this argument.  See generally Defs.' Mem. in Opp. to Pl.'s Mot. Summ. J. at

13–17.  Accordingly, this court grants summary judgment to Arasimowicz regarding the

exempt computer professional exemption.

5.  "Combination" Exemption

This court concluded that no reasonable jury could find, based on the record

before the court, that Arasimowicz was an exempt administrative employee, because

---

[8] The defendants concede that the language of the state regulations regarding the professional exemption "closely follow the FLSA regulations," and in fact has an additional requirement of "exercise of discretion and judgment" that must be met.  See Defs.' Mem. Mot. Summ. J. at 21.

his primary duty, i.e., his CAD detailing, constituted non-exempt production work.  See, supra, Part IV.B.2.  This court also concluded that no reasonable jury could find, based on the record before the court, that Arasimowicz was an exempt learned professional, as his work did not qualify as exempt under the federal regulations.  See, supra, Part IV.B.3.  Accordingly, a reasonable jury could not conclude that Arasimowicz is exempt based on the "combination exemption," which requires that an employee's "primary duty involve[ ] a combination of exempt . . . work."  29 C.F.R. 541.708; see Kadden v. VisuaLex, LLC, 2012 WL 4354781 (S.D.N.Y. Sept. 24, 2012) (permitting combination exemption where an employee performed multiple duties that qualified under separate exemptions and, when combined, constituted employee's "primary duty").

C.  Arasimowicz's Ability to Recover

Arasimowicz has also moved for summary judgment on the issue of liquidated damages under the FLSA.[9]  See Pl.'s Mem. Mot. Summ. J. at 10 (citing 29 U.S.C. § 216(b)).  Arasimowicz argues that summary judgment on this issue is appropriate because the defendants cannot show that they acted in subjective good faith and had objectively reasonable grounds to believe that their alleged failure to compensate Arasimowicz for any overtime worked did not violate the FLSA.  See id. (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)).

The defendants argue that summary judgment on liquidated damages is inappropriate because Arasimowicz has not satisfied his prima facie burden of showing that he actually worked uncompensated overtime, and because the defendants' classification of Arasimowicz as exempt, even if incorrect as a matter of law, "was either

---

[9] Arasimowicz has expressly not moved for summary judgment as to liquidated damages under the CMWA, noting that inquiry under the CMWA is "intensely factual."  See Pl.'s Mem. Mot. Summ. J. at 10 n.3.

reasonable or in good faith."  <u>See</u> Defs.' Opp. to Pl.'s Mot. Summ. J. at 6–10 (<u>prima</u>

<u>facie</u> case), 11–13 (liquidated damages).  This court examines each argument in turn.

    1.  <u>Prima</u> <u>Facie</u> Case

    A plaintiff bringing a FLSA claim under section 207 bears the burden of proving

that he worked uncompensated overtime.  <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328

U.S. 680, 686–87 (1946), <u>superseded</u> <u>by</u> <u>statute</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>IBP, Inc. v.</u>

<u>Alvarez</u>, 546 U.S. 21, 41 (2005).  However, the FLSA also requires the employer "to

keep proper records of wages, hours and other conditions and practices of

employment."  <u>Id.</u> at 687; 29 U.S.C. § 211(c).  Where an employer fails to keep such

records, "an employee has carried out his burden if he proves that he has in fact

performed work for which he was improperly compensated and if he produces sufficient

evidence to show the amount and extent of that work as a matter of just and reasonable

inference."  <u>Anderson</u>, 328 U.S. at 687; <u>see also</u> <u>Reich v. S. New England Telecomms.</u>

<u>Corp.</u>, 121 F.3d 58, 66 (2d Cir. 1997) ("When a defendant . . . fails to maintain

employment records as required by [the FLSA], an employee . . . may submit sufficient

evidence from which violations of the Act and the amount of an award may be

reasonable inferred.") (quotation marks and citiation omitted).  An employee's burden to

produce "sufficient evidence" is low and can be met by that employee's "recollection

alone."  <u>See, e.g.</u>, <u>Berrios v. Nicholas Zito Racing Stable, Inc.</u>, 849 F. Supp. 2d 372,

379–80 (E.D.N.Y. 2012); <u>Doo Nam Yang v. ACBL Corp.</u>, 427 F. Supp. 2d 327, 336

(S.D.N.Y. 2005); <u>Mumbower v. Callicott</u>, 526 F.2d 1183, 1186 (8th Cir. 1975) ("The

District Court relied primarily upon plaintiff's own recollections to determine the number

of hours she worked . . . .  To do so was proper, as defendants maintained none of the

employment records required by the FLSA, and will not be permitted to benefit from their failure to do so.") (internal citations omitted).

Once an employee has produced sufficient evidence of uncompensated overtime and "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," the burden shifts to the employer to provide evidence showing "the precise amount of work performed" or challenging the reasonable inference drawn from the employee's evidence.  Anderson, 328 U.S. at 687–88.

Here, the defendants "did not produce records that definitively established the number of hours worked by the plaintiff."  Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002), overruled on other grounds by Slayton v. Am. Exp. Co., 460 F.3d 215 (2d Cir. 2006).  Moreover, Arasimowicz states that he is not moving for summary judgment as to the issue of the amount of damages, i.e., how much overtime compensation he is due.  Rather, he is merely moving for summary judgment as to whether there is a violation of the FLSA and whether the defendants are liable for liquidated damages.  See Pl.'s Reply Br. at 2–3; see also Brown v. Family Dollar Stores of Indiana, LP, 534 F.3d 593, 597 (7th Cir. 2008) ("The Anderson test addresses whether there is a reasonable basis to calculate damages, and assumes that a violation of the FLSA had been shown.").  Accordingly, for the purposes of this Ruling, this court need only determine whether there is a genuine issue of material fact whether Arasimowicz worked any uncompensated overtime, and it does not need to further inquire how much overtime he worked. See Estrella v. P.R. Painting, 356 Fed. Appx. 495, 497 (2d Cir. 2009) (concluding that failure to compensate employee for "even one hour of overtime" establishes liability, and "[a]nything else relates only to damages");

see also Carmody v. Kansas City Bd. of Police Comm'rs, 713 F.3d 401, 406 (8th Cir. 2013) (clarifying that Anderson's relaxed evidentiary standard applies where "the existence of damages is certain" and "allows uncertainty only for the amount of damages").

Arasimowicz has provided evidence in favor of his claim that he worked uncompensated overtime.  First, Arasimowicz testified that he "usually worked between 47 and 52 hours per week" for the defendants, but he "was never paid for any overtime." Arasimowicz Aff. ¶ 6.  Second, Arasimowicz provided email correspondence in which he told LaFrancois that he worked 47, 48, and 49 hours in consecutive weeks in August 2011, and to which email correspondence LaFrancois responded, "George, That is acceptable[;] thank you."  Email from LaFrancois to Arasimowicz and Delise, dated August 19, 2011 ("August 19 Email"), Ex. A to Pl.'s Reply in Supp. of Mot. Summ. J. (Doc. No. 71-1).  Finally, Arasimowicz apparently produced timesheets to the defendants during discovery, several of which are annexed as exhibits to the defendants' papers, purporting to show overtime worked for which Arasimowicz claims he was uncompensated.  See Exs. E–M to Affidavit of LaFrancois, dated Feb. 14, 2013 ("Feb. 14, 2013 LaFrancois Aff.") (Doc. No. 65).

As stated previously, the defendants do not have records showing how many hours Arasimowicz worked each week.  However, they have put forth evidence challenging Arasimowicz's claim that he worked uncompensated overtime.  LaFrancois testifies that Arasimowicz never worked any overtime.  Defs.' Opp. to Pl.'s Mot. Summ. J. at 8; Feb. 14, 2013 LaFrancois Aff. ¶ 6 ("[P]laintiff was never asked to work overtime, never worked overtime, never requested to be paid for overtime and never submitted

any written documentation or purported time sheet indicating that he had worked

overtime.").  Additionally, LaFrancois testifies that Arasimowicz's "purported timesheets

. . . are totally unreliable and proof of . . . plaintiff's fraudulent intent."  Feb. 14, 2013

LaFrancois Aff. ¶ 9; Defs.' Opp. to Pl.'s Mot. Summ. J. at 9–10.  To support this

statement, LaFrancois spends several pages of his February 14, 2013 Affidavit

discussing apparent inconsistencies or contradictions between the timesheets and

Arasimowicz's deposition testimony.  See Feb. 14, 2013 LaFrancois Aff. ¶¶ 5–23.

    This court concludes that the evidence offered by the defendants, while thin, is

sufficient to create a material issue of fact as to whether Arasimowicz worked

uncompensated overtime.  First, the defendants contest that Arasimowicz worked any

overtime at all.[10]  Second, a substantial portion of LaFrancois's Affidavit contests the

accuracy of Arasimowicz's timesheets.  For example, LaFrancois testified to the

following:  that Arasimowicz gave conflicting testimony during his deposition regarding

when he received his work computer, Feb. 14, 2013 LaFrancois Aff. ¶ 10; that

Arasimowicz did not always enter his time contemporaneously to his work, id.; that

some of Arasimowicz's computation about overtime allegedly worked were made after

he ended employment at All Panel, id. ¶ 11; and that there were inconsistencies

regarding certain of Arasimowicz's time entries, id. ¶¶ 13–23.  These claims are

_____

    [10] The court should point out that several of the defendants' arguments on this issue are
irrelevant.  Whether Arasimowicz asked to work overtime or requested to be paid for overtime is
irrelevant.  The defendants have cited no authority stating that an employee must prove that he asked if
he could work overtime or requested to be paid for overtime; nor have they shown that they "made any
effort to stop [Arasimowicz] from working overtime."  Berrios, 849 F. Supp. 2d at 388.

    Nor is it relevant that the defendants were unaware that Arasimowicz was working overtime.
Although an employer is not liable for a violation of section 207 "where an employer has no knowledge
that an employee is engaging in overtime work and that employee fails to notify the employer or
deliberately prevents the employer from acquiring knowledge of the overtime work," Forrester v. Roth's
I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir. 1981), that is not the case here.  Arasimowicz has
provided evidence showing that he told LaFrancois, at the very least, about three weeks in August 2011
where he worked overtime.

sufficient to create a genuine issue of material fact as to Arasimowicz's claims that he worked unpaid overtime. Accordingly, even though Arasimowicz came forward with evidence sufficient to shift the burden of proof to the defendants, this court cannot grant summary judgment on the issue of whether the defendants failed to pay Arasimowicz for overtime worked, in violation of the FLSA, because the defendants have come forward with sufficient evidence to create a material issue of fact as to that issue.

    2.  Liquidated Damages

    An employer who violates the FLSA is liable for unpaid overtime compensation and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages "are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." Herman, 172 F.3d at 142. An employer must pay liquidated damages unless it can show that it "acted in subjective good faith and had objectively reasonable grounds for believing that the acts or omissions giving rise to the failure did not violate the FLSA." Id. Even then, the choice not to award liquidated damages is within the court's discretion. 29 U.S.C. § 260 ("[I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages."). The employer's "burden of proving good faith and reasonableness . . . is a difficult one, with double damages being the norm and single damages the exception." Herman, 172 F.3d at 132. "To establish 'good faith,' a defendant must produce plain and substantial evidence of at least an

24

honest intention to ascertain what the [FLSA] requires and to comply with it." <u>Reich</u>, 121 F.3d at 71 (internal citations and quotations omitted).

Because the court did not grant Arasimowicz summary judgment as to whether he worked uncompensated overtime, the court cannot reach the issue of whether liquidated damages are appropriate.  However, this court does observe that many of the defendants' arguments on this issue appear to be irrelevant to the issue of liquidated damages.  <u>See</u> Defs.' Opp. to Pl.'s Mot. Summ. J. at 12–13.

## V.   CONCLUSION

For the foregoing reasons, the defendants' Motion for Partial Summary Judgment (Doc. No. 58) is **DENIED**, and Arasimowicz's Cross-Motion for Partial Summary Judgment (Doc. No. 59) is **GRANTED** in part and **DENIED** in part.

**SO ORDERED.**

Dated at New Haven, Connecticut this 5th day of June, 2013.

<u>/s/ Janet C. Hall</u>
Janet C. Hall
United States District Judge